UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP ROSATI,<br><br>      Plaintiff,<br><br>vs.<br><br>IGBINOSO, Chief Medical Officer, California Department of Corrections and Rehabilitation; and SUSAN HUBBARD, Secretary, California Department of Corrections and Rehabilitation,<br><br>      Defendants. | Case No. 1:12-cv-01213-RRB<br><br>**DISMISSAL ORDER** |

Philip Rosati, a state prisoner appearing *pro se* and *in forma pauperis*, filed a civil rights Complaint under 42 U.S.C. § 1983.[1] Rosati is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the R. J. Donovan Prison, Facility 3, San Diego.

I.   **SCREENING REQUIREMENTS**

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a

---

[1] This case was incorrectly originally filed in the Southern District of California, Case No. 3:12-cv-01769-JLS-WVG, and transferred to this District on July 25, 2012.

[2] 28 U.S.C. § 1915A(a).

complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3] Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se*

---

[3]   28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4]   42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules).

[5]   *See Booth v. Churner*, 532 U.S. 731, 734 (2001).

[6]   Fed. R. Civ. P. 8(a)(2).

[7]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[9] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## II. GRAVAMEN OF THE COMPLAINT

Rosati alleges that he is a transsexual male suffering from Gender Identity Disorder ("GID). Rosati further alleges that he

---

[8] *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[9] *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[10] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[11] *Id.*

[12] *Id.* (quoting *Twombly*, 550 U.S. at 555).

requested gender reassignment surgery,[13] but was refused because CDCR policy precludes evaluation of the extent of GID and, if considered medically necessary, gender reassignment surgery.[14] According to Rosati his GID causes him to suffer serious adverse psychological distress. Rosati complains that the refusal to complete his gender reassignment surgery constitutes deliberate indifference to a serious medical condition. Rosati seeks a psychiatric examination by a GID expert to assist in determining whether his GID condition is extreme and, if considered medically necessary, sexual reassignment surgery.

## III. DISCUSSION

In denying relief at the final level of administrative review the Director held:

> **DIRECTOR'S LEVEL DECISION:**
> Appeal is denied.
>
> **ISSUES:**
> Your CDCR 602-HC indicated you were diagnosed with Gender Identity Dysphoria (GID) and you were a transgender (male to female) individual; you stated on July 19, 2010, you submitted a CDC 7362, Health Care Services Request Form, requesting to see your primary care provider (PCP) to request sex reassignment surgery (SRS) or surgery to remove your penis and reposition your urethra so you could sit to urinate without making a mess; you indicated your request was ignored; as of July 29, 2010, you had not seen a nurse or a PCP; you also reported a history of

---

[13]   Consisting of surgical removal of the male genitalia and surgical reconstruction with female genitalia.

[14]   Prior to being imprisoned Rosati partially emasculated himself by surgically removing his testicles.

prior self-mutilation attempts and you felt having male genitalia while having other physical characteristics of a woman, had led to significant psychological distress; you believed SRS, along with hormonal treatment, and living as a female was the only appropriate measures for GID; and you claimed you were being denied key aspects of therapy for you condition; and you believed CDCR policy was discriminatory against transgender individuals.

You requested the following:
- An immediate appointment with a PCP and documentation of your request for SRS.
- A consultation with a surgeon regarding SRS.
- The Medical Authorization Review Committee (MARC) evaluates your request and you receive an answer on this matter.

**PRIOR APPEAL HISTORY:**
Informal Level:
The informal level was bypassed and the appeal was elevated from the informal level to the first level of review.

First Level:
At the first level, submitted on July 29, 2010, you stated your issues and requests as noted above.

The First Level Response (FLR) stated your appeal was denied and indicated:
- Your request was considered cosmetic and not medically necessary; therefore, your request for a consultation and SRS was denied.

Second Level:
At the second level, submitted on October 31, 2010, you disagreed with the FLR; you claimed SRS was not cosmetic; and you believed treatment, including SRS was medically necessary for your condition.

The Second Level Response (SLR) stated your appeal was partially granted and indicated:
- You received an appointment with your PCP regarding your request for SRS.
- Your PCP evaluated you and thoroughly reviewed your UHR and indicated SRS or a consultation with a provider who performed this surgery was not medically indicated, as this was a

>   cosmetic procedure which could not be carried out while in prison per the California Code of Regulations, Title 15.
> - Review by MARC was not medically necessary.
> - The Chief Medical Officer agreed with the PCP's decision.
> - Your appeal was accepted and filed.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
At the Director's Level of Review (DLR), submitted on January 4, 2011, you stated you clearly cited (in all your writings) SRS was not elective nor cosmetic, but rather medically necessary, and the only recognized treatment for patients with extreme GID; and you believed denying you this treatment was deliberate indifference towards your medical needs.

A review of the appeal file was performed and revealed the following:
- Your recent and current treatment for GID included mental health follow-up, Delestrogen (estradiol valerate) injections and Spironolactone (Aldactone), an anti-androgen medication.
- None of your providers involved in your management documented you as having a profound or severe case of GID, and/or required consideration for SRS to appropriately manage your condition.
- Documentation indicated your status was stable and you were exhibiting symptom control.
- A consultation with the endocrinologist for GID management was approved in December 2010; the appointment was pending.

The Department shall provide only medical services for patient-inmates that are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose and is supported by diagnostic information. Inmates may not demand particular medication, diagnostic evaluation, or course of treatment. The California Code of Regulations (CCR), Title 15, Section 3354, Health Care Responsibilities and limitations, (a) Authorized Staff, states, "Only facility-employed health care staff,

contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted within the scope of their licensure, to diagnose illness or, prescribe medication and health care treatment for inmates. No other personnel or inmate may do so."

You are considered an active partner and participant in the health care delivery system. You are encouraged to cooperate with your clinicians in order to receive the proper care and management of your condition. You will continue to be evaluated and treatment will be provided based on your clinician's evaluation, diagnosis, and recommended treatment plan, in accordance with appropriate policies and procedures.

You may request the services of an outside consultant by following the directions in the California Code of Regulations, Title 15, Section 3354 (c). However, be advised all costs associated with an outside consultation, including evaluations, tests, custodial supervision, transportation, etc., are the responsibility of the person requesting the outside evaluation.

After review, there is no compelling evidence that warrants intervention at the Director's Level of Review as your medical condition has been evaluated by licensed clinical staff and you have received and/or are receiving adequate medical care.

**RULES AND REGULATIONS:**
The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Program Policies and Procedures (2006); Mental Health Services Delivery System (MHSDS); and the Department Operations Manual.

**ORDER:**
No changes or modifications are required by the institution.

This decision exhausts your available administrative remedy within the CDCR.[15]

---

[15]   Docket 1 at 56–58. The Decision was signed by L. Zamora, Chief, California Prison Health Care Services, on behalf of the Director, CDCR.

It is unquestionably the law that the deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment.[16] To make a claim, Rosati must show that Defendants exhibited "deliberate indifference to serious medical needs."[17] Where a plaintiff has failed to allege a physical injury, he may not bring an action for mental or emotional injury.[18] While the physical injury need not be significant, it must be more than *de minimis*.[19]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates the Constitution.[20] In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[21] In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of

---

[16]   *Estelle v. Gamble* 429 U.S. 97, 104–105 (1976); *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[17]   *Estelle*, 429 U.S. at 105.

[18]   42 U.S.C. § 1997e(e).

[19]   *See Oliver v. Keller*, 289 F.3d 623, 626–27 (9th Cir. 2002).

[20]   *Estelle*, 429 U.S. at 106.

[21]   *Whitley,* 475 U.S. at 319.

neglect.[22] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[23]

In this case, neither Defendant has deliberately ignored or failed to respond to Rosati's medical needs. At most, Rosati's Complaint establishes a disagreement with the prescribed course of treatment, which is "insufficient as a matter of law, to establish deliberate indifference."[24] "To prevail on a claim involving choices

---

[22] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[23] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

[24] *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting that a disagreement between a prisoner and a medical professional over the most appropriate course of

between alternative course of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"[25]  Rosati's claim does not meet this standard.

**IV.  CONCLUSION/ORDER**

Because it does not appear that Rosati can plead facts sufficient to state a colorable claim of deliberate indifference, the complaint is properly dismissed without leave to amend.  To the extent that the Complaint may raise state-law claims, this Court declines to exercise its supplemental jurisdiction over them.[26]

Accordingly, it is therefore **ORDERED** that the Complaint on file herein is **DISMISSED** without prejudice and the Clerk of the Court is directed to enter judgment dismissing the Complaint.

**IT IS SO ORDERED** this 26th day of April, 2013.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

treatment cannot give rise to a viable claim of deliberate difference).

[25] *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (*quoting Jackson v. McIntosh*).

[26] "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c).